Barbara MANGRUM, Plaintiff/Appellant,

v.

WAL–MART STORES, INC.,
Defendant/Appellee.

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Jan. 29, 1997.

Appeal Denied July 14, 1997.

E. Covington Johnston, Jr., Franklin, for Plaintiff/Appellant.

Bradley Gilmore, Nashville, Charles A. Powell, III, Birmingham, for Defendant/Appellee.

## OPINION

TODD, Presiding Judge, Middle Section.

The captioned plaintiff has appealed from the summary dismissal of her suit for age discrimination in her discharge from employment by the defendant.

Plaintiff presents a single issue for review, as follows:

Whether the Trial Judge erroneously granted the Defendant's Motion for Summary Judgment, and dismissed the plaintiff's case.

Defendant presents two issues, as follows:

I. Whether the factual findings of the Tennessee Department of Employment Security are entitled to preclusive effect under the doctrine of collateral estoppel

thereby preventing the plaintiff from relitigating the reason for her termination.

2. Whether Wal–Mart is entitled to summary judgment based on the plaintiff's failure to produce any evidence that its legitimate nondiscriminatory reason for her termination is a pretext for age discrimination.

The complaint alleges violation of T.C.A.App. §§ 4–21–101, et seq, which constitute Chapter 21 of Title 4 entitled "Human Rights," of which Part 4 is designated "Employment Related Discrimination" and § 4–21–401 is entitled "Employer Practices." It reads as follows:

4–21–401. **Employer practices.**—(a) It is a discriminatory practice for an employer to:

(1) Fail or refuse to hire or discharge any person or otherwise to discriminate against an individual with respect to compensation, terms, conditions or privileges of employment because of such individual's race, creed, color, religion, sex, age or national origin; or

(2) Limit, segregate or classify an employee or applicants for employment in any way which would deprive or tend to deprive or tend to deprive an individual of employment opportunities or otherwise adversely affect the status of an employee, because of race, creed, color, religion, sex, age or national origin.

The complaint states:

3. Plaintiff began her employment with Defendant Wal–Mart in March of 1984. At the time of her discharge on May 17, 1989, she was a department manager.

4. In the fall of 1988, Defendant had two stores in the Franklin area. A new store was constructed and both older stores were to be consolidated therein.

5. Prior to the consolidation, Plaintiff and another employee (over 40) were told by their manager that Defendant Wal–Mart was going to have to weed out the older employees because they were too set in their ways.

6. When Plaintiff moved to the new store and took over as department manager, she was treated more harshly than other persons outside of the protective class. Management employees made false reports against her and found fault with her work as part of an effort to remove her from her job because of her age.

7. Plaintiff was discharged on the grounds of insubordination and the management officials gave false and misleading testimony against her when she applied for employment security benefits. These false and misleading statements were a continuation of the effort to have her removed from her employment.

The answer of defendant admits paragraphs 3 and 4 above, and admits paragraph 7 except that false and misleading statements and testimony are denied. The answer denies any unlawful discrimination against plaintiff.

At this stage of the proceedings, defendant's motion for summary judgment placed the burden upon defendant to produce uncontroverted evidence of a fact or facts which require dismissal of the complaint as a matter of law. T.R.C.P. Rule 56.03. *Caledonia Leasing & Equipment Co., v. Armstrong, Allen, Braden, Goodman, McBride & Prewitt,* Tenn.App.1992, 865 S.W.2d 10; *Masters v. Rishton,* Tenn.App.1992, 863 S.W.2d 702; *Brown v. J.C. Penney Life Ins. Co.,* Tenn. App.1992, 861 S.W.2d 834.

■ Defendant insists that plaintiff is collaterally estopped to assert that she was discharged because of her age because her claim for unemployment compensation by the Department of Employment Security was denied because of a finding that she was discharged for insubordination.

The record contains certified copies of records of the Department of Employment Security, including the decision of the Board of Review which states:

**FINDING OF FACT:** The claimant's most recent employment prior to filing this claim, was as a department manager for Wal–Mart, Franklin, Tennessee, from March 30, 1984, until May 17, 1989, when she was discharged for insubordination. As department manager, the claimant was responsible for maintaining orderly merchandise racks. Previously she had been

counseled for failure to maintain the proper order and again on May 16, 1989, two assistant managers met with the claimant in an attempt to counsel her on this subject. During the meeting, the managers at all times spoke to her in quiet respectful tones. In response, the claimant was loud, irate, disrespectful and used expressions containing emphatic, vulgar slang. She informed the assistant managers that she would not allow them to counsel her. When presented with a counseling form, she refused to look at it or sign it. The assistant managers told her that they were sending her home for the remainder of the shift and she angrily responded that she would not go home. She left the office in a loud, irate manner before the conclusion of the meeting. On the following day, she was discharged because of her insubordinate behavior.

**CONCLUSIONS OF LAW:** After carefully considering the entire record in this case, including the additional evidence received during the Board of Review hearing, we find that the claimant was discharged from her most recent employment for misconduct connected with work under TCA 50–7–303(a)(2). The additional evidence received during the Board of Review hearing consisted primarily of a tape recording of the May 16, 1989, meeting which was supplied by the claimant. The recording showed obvious signs of interference or tempering and did not contain certain specific curses that the managers accused the claimant of uttering during the meeting. However, even without reported evidence of these specific remarks, the claimant's general demeanor and language, as revealed on the tape, are clearly insubordinate and highly inappropriate to the discussion the assistant managers were attempting to have with her. Her behavior, under the circumstances, was misconduct connected with work and causes this claim for benefits to be rejected.

**DECISION:** The decision of the Appeals Tribunal, which rejected this claim under TCA 50–7–303(a)(2), is affirmed.

In *Morris v. Esmark Apparel, Inc.*, Tenn. App.1991, 832 S.W.2d 563, the plaintiff sued for breach of employment contract by discharge without cause. The Trial Court summarily dismissed because the Department of Employment Security had denied unemployment benefits based upon a finding that the plaintiff was discharged for misconduct connected with his work. This Court affirmed and said:

In 1996 the U.S. Supreme Court expressly applied the doctrine in the administrative law context, stating:

When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose. (Citations omitted)

*United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966).

Subsequently, in the case of *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986), that court held:

.... [W]e hold that when a state agency "acting in a judicial capacity ... resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate," [U.S. v.] *Utah Construction & Mining Co.*, *supra*, 384 U.S. [394], at 422, 86 S.Ct. [1545], at 1560, [16 L.Ed.2d 642 (1966) ] federal courts must give the agency's fact finding the same preclusive effect to which it would be entitled in the State's courts.

The doctrines of *res judicata* and collateral estoppel are applicable to give conclusive effect to quasi-judicial determinations of administrative agencies. *See, Ryan v. New York Telephone Co.*, 62 N.Y.2d 494, 478 N.Y.S.2d 823, 467 N.E.2d 487 (1984); *Bostwick v. Atlas Iron Masters, Inc.* 780 P.2d 1184 (Okla.App.1988); *Bresnahan v. May Department Stores Co.*, 726 S.W.2d 327 (Mo.–Banc 1987).

In 1993, the General Assembly enacted Chapter 169, Public Acts of 1993 which added to T.C.A. § 50–7–304, a new subsection K, reading as follows:

(k) Conclusiveness of Findings. No finding of fact or law, judgment, conclusion, or

final order made with respect to a claim for unemployment compensation under this chapter may be conclusive in any separate or subsequent action or proceeding in another forum, except proceedings under this chapter, regardless of whether the prior action was between the same or related parties or involved the same facts.

The applicability of this amendment must be decided upon the following facts:

Plaintiff was discharged on May 17, 1989. On September 27, 1989, the State Department of Employment Security Board of Review denied plaintiff's claim for unemployment compensation, finding that plaintiff was discharged for insubordination constituting misconduct. The present complaint was filed on May 16, 1990. On August 16, 1990, defendant filed a motion for summary judgment supported by certified records of the Unemployment Compensation proceeding, the complaint, the answer, and a memorandum of law. There was no affidavit of any official of the defendant regarding the discharge or the reason therefor. This motion was based entirely upon the preclusive effect of the finding of the State Department of Employment Security that plaintiff was discharged for misconduct. On December 11, 1990, the Trial Court overruled the motion.

The foregoing events preceded the enactment of subsection K in 1993.

On April 3, 1996, defendant filed a second motion for summary judgment which is the subject of this appeal. The motion was supported by records of the Department of Employment Security and other evidence which will be discussed hereafter. On April 25, 1996, the Trial Judge filed a memorandum stating:

Since the court's earlier denial of summary judgment, the Tennessee Court of Appeals has decided the case of *Morris v. Esmark Apparel, Inc., 832 S.W.2d 563* (Tenn.App.1991). The case establishes that the doctrines of res judicata and collateral estoppel *are* applicable to give conclusive effect to quasi-judicial determinations of administrative agencies when the following conditions are met: (1) the issue decided in the prior adjudication is identical with the issue presented in the present

action; (2) the prior adjudication resulted in a judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party to the prior adjudication; and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit. It is clear in this case that the last three elements apply. There is an unappealed final administrative determination by the Tennessee Department of Security (TDES) on the issue of the reasons for plaintiff's termination from defendant employer. The prior adjudication resulted in a judgment on the merits and did become final. The parties in this action are the same as the parties in the earlier action. Plaintiff was represented by counsel during the TDES proceedings and was given the full opportunity for a hearing. *See* 832 S.W.2d at 567.

Plaintiff claims that the issue before the Department of Employment Security is not identical to the issue presented in this case. She further claims that the Department of Employment Security lacks subject matter jurisdiction pursuant to T.C.A. § 4–21–101. The court concludes, however, that the issue presented to the Employment Security Tribunal and in this court is the same—what was the reason for plaintiff's dismissal from her employment? TDES found conclusively that the reason was *insubordination and misconduct* connect with work. Plaintiff asserted age discrimination on the initial statement she filed with TDES May 18, 1989. Plaintiff, represented by counsel, had a full opportunity to advance her theory of age discrimination to that Tribunal. Although the remedies available under the Tennessee Human Rights Act differ from those available under Department of Employment Security proceedings, the issue to be litigated remains the same. Collateral estoppel applies here.

If applicable, the above quoted subsection K appears to preclude the quoted conclusion of the Trial Judge that collateral estoppel applies. The only question is whether subsection K is applicable to facts arising before

its passage, but adjudicated after its effective date.

Statutes do not operate retroactively, unless this is so provided therein. *Jennings v. Jennings,* 165 Tenn. 295, 54 S.W.2d 961 (1932).

However, statutes dealing with matters of procedure or remedy are generally held to be applicable to proceedings after enactment even though the facts occurred prior to enactment. *Henderson v. Ford,* Tenn.1972, 488 S.W.2d 720; *O'Brien v. State,* 205 Tenn. 405, 326 S.W.2d 759 (1959); *Brandon v. Warmath,* 198 Tenn. 38, 277 S.W.2d 408 (1955); *State v. Bone,* 185 Tenn. 78, 203 S.W.2d 362 (1947); *State ex rel Neilson v. Harwood,* 183 Tenn. 567, 194 S.W.2d 448 (1946); *Cavender v. Hewitt,* 145 Tenn. 471, 239 S.W. 767; *McAdoo v. Smith,* 64 Tenn. (5 Baxt.) 695 (1875); *Gardenhire v. McCombs,* 33 Tenn. (1 Sneed) 83 (1853).

Subsection K, applies to procedure and not to rights. It is therefore applicable to the present proceedings, and precludes the affirmance of the judgment of the Trial Court on the ground of collateral estoppel by the decision of the administrative board.

■ However, the memorandum of the Trial Judge specified another ground for the decision as follows:

Plaintiff admits refusing to look at or sign a counseling form. The audio tape she provided to the TDES Tribunal shows clearly that she was insubordinate in her tone and language to her superiors.

The only evidence submitted by plaintiff to support her theory of age discrimination is her claim that she twice overheard a Wal–Mart manager make a comment about "weeding out" older employees. Even assuming that such a comment occurred, it does not a raise a fact issue as to pretext. Brenner, 874 S.W.2d at 585. The remark relied upon by plaintiff was not made directly to her, although she claims to have overheard it. The manager who made the comment had left the store before her termination, and was not involved in the termination in any way.

In addition to the employment security records, defendant's second motion for summary judgment was supported by the following:

1. Affidavit of Jim Murrell which stated:

2. I became the store manager at the Franklin Wal–Mart # 272 on May 12, 1989.

3. I was the store manager that terminated Barbara Mangrum. Ms. Mangrum was discharged on May 16, 1989 because she was insubordinate to assistant managers Cliff Washington and Ken Brooks when they tried to counsel her for not keeping her department in in order. Ms. Mangrum was not discharged for poor job performance.

4. Ms. Mangrum was replaced by Linda Fulcher. Attached as Exhibit A is a copy of Ms. Fulcher's Associate Information Form that reflects her date of birth as July 2, 1945 making her 44 years old in May, 1989. The Associate Information Form is a business record that Wal–Mart ordinarily keeps in the course of its business. I am familiar with this form and it accurately reflects Ms. Fulcher's personal information.

5. Ms. Mangrum's counseling form dated May 16, 1989, attached as Exhibit B, reflects that her counseling was a decision-making day. Ms. Mangrum did not sign the form. Wal–Mart policy at the time of Ms. Mangrum's termination stated that an employee's refusal to sign a decision-making day counseling form was a terminable offense.

Exhibit B to the affidavit reads as follows:

Name: Barbara Faye Wynne      S.S.#: 410–60–8349      Location: Franklin
Date Hired:                                                   Position: D.M. Mens & Boys

Facts concerning the incident or problem. Please give all details, including dates.

5/12/89, Friday—Ken Brooks was touring mens wear and noticed an entire 4′ section empty on an N-rack, the parts of the N-rack that was full was

unorganized there a mixture of denim jackets, woven shirts, short sleeve shirts & spring pants & summer pants. Fay was counseled on 11/28/88 by Donna Huggins & Mike Lewis for this same reason. Also on 5/12—some of the clearance was not current. This also does not conform to Wal–Mart Standards.

Associate's Action Plan to Solve the Problem (To be filled out by Associate)

(Blank)

| (Marked "X") | | Cliff Washington | 5/16/89 |
| --- | --- | --- | --- |
| Associate | Date | Management | Date |
| | | Ken Brooks | 5/16/89 |

( ) Written Reminder
(X) Decision–Making Day

---

2. Excerpt from a deposition of plaintiff stating:

Q. Okay. Paragraph 5, I probably should have made a copy for you. Prior to the consolidation of the two stores, plaintiff and another employee over 40 were told by their manager that the defendant Wal–Mart was going to have to weed out the older employees because they were too set in their ways.

A. And they couldn't change.

Q. And they couldn't change.

A. Right.

Q. Okay. How about Mr. Murrell? Did you ever hear Murrell, did he ever say anything like that to you?

A. No, he didn't say anything like that but—

Q. And then I take it that your relationship with Mr. Lewis wasn't as good. He was—he told you that they were trying to weed out older employees?

A. Uh-huh. He didn't exactly tell me that. I heard him say that.

Q. Okay.

A. Okay?

Q. Who did he say it to, do you know?

A. Yeah. Assistant Managers.

Q. Across the top there it says Associate's Confidential Plan of Action? And then name, Faye Wynne, which was your name at the time of this?

A. Yeah.

Q. And I'm not sure I can read this but it's like on November 22nd of 1988 Mike Lewis and I was on a floor tour. We found that Department 23 was definitely unacceptable.

Would Department 23 have been the one where you were department manager at that time?

A. Uh-huh. Yeah.

Q. Per Wal–Mart guidelines, I guess. We found that the H racks—is the best I can do with that—was totally unorganized such as looks like short sleeve mixed with long sleeve, knits mixed also. We found jeans, looks like cords, dress slacks mixed.

The condition of Department 23 isn't acceptable to Wal–Mart management or the customer. Faye needs to realize the importance of rack rules, maintenance, or Faye will not continue being a soft lines department manager for Wal–Mart. I need you to tell me what you are going to do differently to insure this doesn't happen again.

And I take it that is that Mr. Lewis's signature down at the bottom, do you think? I can't make it out.

A. Yeah, manager.

Q. And it's dated November 28th, 1988.

Q. And then about halfway down it says associate's action plan to solve the problem and to be filled out by the associate. I take it this is what you wrote in response?

A. (Witness nods head up and down.)

Q. Can you read that to me? That's harder for me to read that.

A. I will keep my department up like I have always. Both departments have prospered since I took them over and they will—

Q. Continue?

A. Continue, yeah. They will continue. Which they did.

Q. Okay.

A. I mean I've never had anybody else, you know, to complain about my department. Some of them—I've always pulled the departments up and made the company more money within the year, you know, the way I run my departments.

Q. Okay. And at that meeting do you recall them giving you the Associate's Confidential Plan of Action, this one here, I think?

A. Yes, this is from—plan of action? Okay. He states in here that I'm not responsible for my action in all kinds of ways.

Q. Okay.,

A. But it was not my actions that my department be messed up and rigged up. So therefore, I didn't take the responsibility for that and I didn't take the blame for it.

Q. Okay. But did they give you this document at that time? Do you recall?

A. Yeah. Well, they put it down for me but I didn't look at it. I didn't even sign it because I was not guilty of it.

Q. Well, if you didn't look at it, how did you know that you weren't guilty of it?

A. Because I knew what they was doing.

Q. During the meeting with Mr. Brooks and Mr. Washington, were you angry at them?

A. Well, I didn't love them.

Q. That's safe to say. But were you angry at them?

A. To a certain extent.

Q. Did you lose your temper during the course of the meeting?

A. No. About the only thing I said that I was not going to sign the statement that I was—something that I was not guilty of. I turned around and walked off.

The excerpt from the deposition is not authenticated in any manner except by the "Filed" stamp of the Trial Clerk and attachment to the unsworn motion. It is doubtful that the excerpt is competent evidence under T.R.C.P. Rule 56.05.

Discrimination involves not merely an act, but an attitude or motive or reason or purpose which is a mental condition, either actual or reasonably to be inferred from the circumstances.

■ When charged with discriminatory discharge, the employer may defend by "articulating a legitimate nondiscriminatory reason for the discharge." If the employer "articulates a legitimate nondiscriminatory reason for the discharge," it is entitled to summary judgment unless the employee responds with contradiction of the evidence of the nondiscriminatory reason or with evidence that the claim of a nondiscriminatory reason is "pretextual" and that the true reason for discharge was discriminatory. *Brenner v. Textron Aerostructures*, Tenn.App. 1994, 874 S.W.2d 579, 583; *Silpacharin v. Metropolitan Government*, Tenn.App.1990, 797 S.W.2d 625, 629; *Bruce v. Western Auto Supply Co.*, Tenn.App.1984, 669 S.W.2d 95, 97.

The word, "articulate," which appears in the cited authorities, is defined as, "to draw up or write in separate articles; specify, particularize," Webster's Third New International Dictionary, unabridged.

Ordinarily, where suit is brought for damages, the defendant is entitled to summary judgment upon his uncontradicted affidavit that he did not commit the wrong alleged in the complaint. However, in the case of suits for discrimination, the above cited authorities hold that, to justify summary judgment, the defendant must "articulate" (state with particularity) a nondiscriminatory reason or reasons for the discharge. That is to say, it is not sufficient for the defendant to swear simply, "I did not discriminate against the plaintiff," he must go further and swear that his reason for the discharge was a particular nondiscriminatory reason. It is not necessary that the affidavit of the defendant attest to knowledge of the facts supporting the reason for the discharge. It is sufficient if the person who discharged the employee states under oath the specific nondiscriminatory reason why he discharged the plaintiff.

When defendant has thus satisfied the foregoing requirement without contradiction by plaintiff, defendant is entitled to summary judgment. Thereupon the burden shifts to the plaintiff to offer evidence to contradict the affidavit of defendant to avoid summary judgment.

The mental intent to discriminate may be evidenced by proof of statements and/or acts of defendant and by affidavits denying the existence of the claimed reason for discharge. The only evidence offered by plaintiff in contradiction of the affidavit of Mr. Murrell, manager who discharged her, is contained in the unauthenticated excerpt from plaintiff's deposition, quoted above. As stated above, the competency of the excerpt is questionable, but there is no evidence of any objection to its consideration. Even if considered, the excerpt does not contain evidence to contradict the affidavit of Mr. Murrell. Hearsay repetition of statements of subordinate officials is not competent contradiction of the sworn statement of the chief supervising official who made the decision to discharge plaintiff. Evidence of a series of similar discharges of similarly situated employees without a nondiscriminatory cause, or inconsistent statements of Mr. Murrell might contradict his affidavit, but no such evidence was offered by plaintiff.

If considered, the excerpt from plaintiff's deposition contains her admission of her refusal to cooperate with supervisors and follow company rules which corroborates, rather than contradicts the affidavit of Mr. Murrell.

For the reasons stated, the judgment of the Trial Court is affirmed. Costs of this appeal are taxed to the appellant. The cause is remanded to the Trial Court for any necessary further procedure.

**AFFIRMED AND REMANDED**

LEWIS and KOCH, JJ., concur.