April 6, 1998

<u>FOR PUBLICATION</u>

IN THE SUPREME COURT OF TENNESSEE

AT JACKSON

FILED

**April 6, 1998**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

JUANITA MITCHELL, PERSONAL            (
REPRESENTATIVE OF THE ESTATE          (
OF BILLY GWINN MITCHELL,              (
                                      (
    Plaintiff-Appellant,             (     Shelby Chancery
                                      (
                                      (     Hon. Russell Fowler,
                                      (     Special Chancellor
v.                                    (
                                      (     No. 02S01-9703-CH-00020
                                      (
                                      (
SAM F. COLE, JR., SUBSTITUTE          (
TRUSTEE, ESTATE OF PRUDENCE           (
REYNOLDS, AND GERALD W.               (
PICKENS, ADMINISTRATOR,               (
                                      (
    Defendants-Appellees.            (


<u>For Plaintiff-Appellant</u>:               <u>For Defendants-Appellees</u>:

James Stephen King                        Sam F. Cole, Jr.
Arthur E. Quinn                           Memphis
The Bogatin Law Firm, PLC
Memphis


**O P I N I O N**


JUDGMENT OF COURT OF APPEALS
MODIFIED AND CASE REMANDED.                        REID, Sp. J.

This case presents for review the decision of the Court of Appeals that a debtor cannot collaterally attack in state court an adjudication made in a Chapter 11 bankruptcy proceeding regarding the balance due on a debt owed by the debtor-bankrupt. The judgment of the Court of Appeals is affirmed as modified.

**I**

In 1973 Prudence Reynolds, now deceased, sold a farm to the appellant, Billy Gwin Mitchell. Incident to the sale, Mitchell executed a promissory note in the principal amount of $134,140.71 payable to Reynolds in 240 equal monthly installments of $1,040.00, principal and interest. The promissory note was secured by a deed of trust on the farm.

On April 6, 1983, Mitchell filed a voluntary petition for reorganization pursuant to Chapter 11 of the Bankruptcy Code. Apparently, Mitchell made some payments on the note prior to his filing the bankruptcy petition. On June 13, 1984, the bankruptcy court entered an order confirming Mitchell's reorganization plan as amended. The amended plan allowed Reynolds a secured claim in the principal amount of $102,902.28. With respect to the terms of the payment of the debt, the amended plan provided:

> The secured claim of Mrs. J. P. Reynolds
> ("Reynolds") shall be fully settled, satisfied,
> and discharged by paying Reynolds the remaining
> sums due in accordance with the terms of her
> Promissory Note and Deed of Trust; except that,
> the terms of said Note shall be extended by a

> period equal to the number of months that said Note is in arrears. The first installment shall be due and payable upon confirmation with a similar payment being due and payable each month thereafter until said Note shall have been paid in full. Reynolds shall retain her lien upon the Debtor's 144 acre farm.

The record shows that subsequent to confirmation of the amended plan, Mitchell paid to Reynolds in cash $27,353.25.

On January 25, 1988, Mitchell filed an interim report in the bankruptcy case. In the section entitled "Total Amount of Claims Allowed," the report reflects the principal amount of Reynolds' claim remained at $102,902.28. Reynolds died on June 10, 1988. After her death, Mitchell made no further payments on the note. The final report, filed November 10, 1988, is virtually identical to the interim report and sets forth the same amount for Reynolds' claim. On January 13, 1989, the bankruptcy court entered a final decree closing Mitchell's case.

After Mitchell and Gerald W. Pickens, executor of Reynolds' estate, were not able to agree on the amount owed, defendant Sam F. Cole, Jr., substitute trustee under the deed of trust, gave Mitchell written notice that the entire balance on the note was due and payable and made demand for $113,832.70, principal and accrued interest, plus $17,074.80 for attorney's fees.

On August 29, 1989, Mitchell filed a complaint for a temporary restraining order and for temporary and permanent

injunctions to stop the foreclosure.  Mitchell contended that he had an oral agreement with Reynolds as to payment of the note through goods and services to her.  According to Mitchell, the value of these goods and services, as well as cash payments made to Reynolds, reduced the balance due to $66,330.18.  In the counter-complaint, the defendants alleged that Mitchell owed the principal sum of $102,092.28, as reflected in the final report of his Chapter 11 bankruptcy case, plus interest and attorney fees.  In answer to the counter-complaint, Mitchell asserted that the amount stated in his bankruptcy proceeding was erroneous.

Prior to trial, the trial court granted the defendants' motion in limine prohibiting Mitchell from presenting evidence concerning oral statements made by Reynolds prior to her death in regard to the note.[1]  At trial, Mitchell testified that he had a very close relationship with Reynolds, his aunt, and that he bought the farm to provide her with a continuous stream of income for the rest of her life.  Over repeated objections by the defendants' counsel, Mitchell and other witnesses were allowed to testify that various goods and services were provided to Reynolds by a partnership which was owned by Mitchell and his sisters.  Included in the claimed services was $40,000.00 for providing lodging and wages for the decedent's "grounds keeper" over a period of some eight years.  The jury found that Mitchell owed $41,101.64 on the note and $21,900.00 in attorney's fees.

---

[1]Not only did Mitchell assert that the amount owed was almost half as much as what the defendants claimed, he also alleged that Reynolds promised to forgive the debt upon her death.

The defendants appealed, alleging that the trial court erred in instructing the jury to consider "payments" made by the partnership to Reynolds on Mitchell's behalf and in allowing testimony regarding alleged payments on the note. The Court of Appeals reversed, holding that the evidence of the payments was inadmissible because the bankruptcy proceeding established the outstanding balance on the note as of the date of the final decree. The case was remanded to the trial court for a hearing to determine the amount of payments made by Mitchell from the date of the final decree until the date of trial, plus all accrued interest.

**II**

Appellant Mitchell's position is not entirely clear. In the Court of Appeals, he contended that the bankruptcy court had erred in determining the principal balance owed to be $102,902.28. He attributed the "mistake" to a misunderstanding with his attorneys in the bankruptcy proceedings. On this appeal, Mitchell takes the position that the amount set forth in the amended plan, which was confirmed by the bankruptcy court on June 13, 1984, established the balance due the decedent's estate on that date. He further contends that the claimed credits for payments and services should be applied to the $102,902.28 debt, leaving a balance of $41,101.64. He asserts that the reports filed by him subsequent to the order confirming the plan do not have the same legal effect as the confirmed plan and that those reports are not res judicata.

Section 1141 of the Bankruptcy Code sets forth the consequences of the confirmation of a Chapter 11 plan. Pursuant to 11 U.S.C. § 1141(a), "the provisions of a confirmed plan bind the debtor . . . and any creditor . . . [of] the debtor." Unlike Chapter 13, which delays discharge until the debtor has met his obligations under the plan, 11 U.S.C. § 1328, confirmation of a Chapter 11 plan operates as a discharge. 11 U.S. C. § 1141(d).

The federal courts have consistently upheld the binding effect of the provisions of a Chapter 11 plan. In In re Dooley, 116 B.R. 573, 580 (Bankr. S.D. Ohio 1990), the court held that the Chapter 11 debtor was precluded, under the judicial concepts of claim and issue preclusion and the specific provisions of Section 1141 of the Bankruptcy Code, from relitigating the amount or application of his preconfirmation payments to a creditor. In In re Chattanooga Wholesale Antiques, Inc., 930 F.2d 458, 463 (6th Cir. 1991), the court stated:

> Confirmation of a plan of reorganization by the bankruptcy court has the effect of a judgment by the district court and res judicata principles bar relitigation of any issues raised or that could have been raised in the confirmation proceedings.

Thus, in the present case, Mitchell is bound by the provisions of his confirmed Chapter 11 plan establishing $102,902.28 as the outstanding principal balance on the note as of June 13, 1984, the date of the order of confirmation.

Preconfirmation payments in goods and services are irrelevant because the court must accept $102,902.28 as the outstanding balance as of the date of the confirmation order. The trial court erred in allowing Mitchell to present evidence about alleged payments in goods and services made prior to confirmation.

In rectifying this error, the Court of Appeals improperly limited the proof to the amount of payments made after the final decree. The Court of Appeals failed to distinguish between payments made by Mitchell prior to the date of the confirmation order and those made subsequent to the date of that order. That court erroneously relied on the final report to determine the amount owed at the conclusion of the bankruptcy proceeding. The final report does not purport to state the amount of the debt as of the date of the filing of the report, nor does it show payments made to secured creditors after confirmation of the Chapter 11 plan in 1984. The report merely restates the amount of secured claims allowed under the confirmed plan. The report cannot be res judicata because it is not an order of the court. The final decree also is not res judicata; the order of confirmation is the controlling order. The final decree merely closes the case after the estate has been fully administered. See Fed. R. Bankr. 3022. In In re Greater Jacksonville Transportation Co., 169 B.R. 221, 224 (Bankr. M.D. Fla. 1994), the court stated:

> Even a cursory reading of this last Rule [Fed. R. Bankr. 3022] leaves no doubt that the entry of a final decree is merely a perfunctory, administrative event and nothing

> more than a ministerial housekeeping act which was never designed to determine with finality the substantive rights of parties of interest involved in a Chapter 11 case. This should be evident from the fact that the final decree is entered without notice and hearing to anyone and could be entered even on the Court's own motion.

On remand, the court should determine the amount of credits due since the date of the order confirming the amended reorganization plan. Whether Mitchell is entitled to credits on the debt for goods and services rendered subsequent to the date of the order of confirmation is a question to be determined in the trial court.

**III**

This decision is limited to the holding that only the determinations made in the confirmed amended plan of reorganization, not the subsequent reports by the debtor in possession, are res judicata. With regard to the reports made by Mitchell as debtor in possession subsequent to the confirmation of the amended plan, the only issue resolved by this Court is that those reports are not res judicata. The case obviously presents myriad issues of law and evidence to be resolved on remand.

The judgment of the Court of Appeals is affirmed as modified, and the case is remanded to the trial court for further proceedings.

Costs are taxed one-half to the appellant and one-half to the defendant estate.

_____
Lyle Reid, Special Justice

Concur:

Anderson, C.J., Drowota, and Holder, JJ.

Birch, J. - Not participating.