IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 10, 2010 Session

MARK WAYMAN d/b/a ABLE TOWING v. TRANSPORTATION
LICENSING COMMISSION OF THE METROPOLITAN GOVERNMENT
OF NASHVILLE AND DAVIDSON COUNTY, TENNESSEE

Direct Appeal from the Chancery Court for Davidson County
No. 09-386-1     Claudia C. Bonnyman, Chancellor

No. M2009-01360-COA-R3-CV - Filed April 5, 2010

The Transportation Licensing Commission revoked Petitioner's license to operate a wrecker
service. The chancery court upheld the revocation. We affirm.

**Tenn. R. App. P. Appeal as of Right; Judgment of the Chancery Court Affirmed;**
**and Remanded**

DAVID R. FARMER., J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J.,
W.S., and J. STEVEN STAFFORD, J., joined.

Phillip L. Davidson, Nashville, Tennessee, for the appellant, Mark Wayman d/b/a Able
Towing.

Sue B. Cain, Director of Law, Lora Barkenbus Fox and Paul Jefferson Campbell, Assistant
Metropolitan Attorneys, Nashville, Tennessee, for the appellees, Transportation and
Licensing Commission of the Metropolitan Government of Nashville and Davidson County,
Tennessee.

**OPINION**

This dispute concerns the revocation of Petitioner's license to operate a wrecker
service by the Transportation Licensing Commission of Metropolitan Government of
Nashville and Davidson County ("the Commission") in February 2009. The facts relevant
to our disposition of this matter are undisputed. Petitioner/Appellant Mark Wayman d/b/a
Able Towing (Mr. Wayman or "Able Towing") operated a wrecker service under a license
issued by the Commission pursuant to the Metro Code of Law ("M.C.L."). On July 22, 2008,
the Commission held a hearing regarding complaints against Able Towing. The matters

before the Commission included a complaint by Eric Wilson (Mr. Wilson), who alleged that, on April 7, 2008, his vehicle had been towed from his place of employment at Kinkos without authorization in violation of Tennessee Code Annotated § 55-16-112. Section 55-16-112 requires "express written authorization for towing and storage of each vehicle." At the July 2008 hearing, Mr. Wayman produced a towing slip signed by "Debbie Knight" and a signed statement by Debbie Knight stating that she had authorized the towing. Mr. Wayman was asked whether Ms. Knight was his step-daughter, and Mr. Wayman stated that she was no relation to him. The Commission observed that the signatures on the towing slip and letter that purportedly belonged to Debbie Knight clearly did not match. The Commission found Mr. Wayman guilty of towing Mr. Wilson's vehicle without proper authorization. The Commission suspended Mr. Wayman's license for 12 months for two counts of violating Tennessee Code Annotated § 55-15-112 and for violations of M.C.L. 6.80.320(B); M.C.L. 6.80.185; M.C.L. 6.80.450(F); and M.C.L. 6.80.575. Mr. Wayman appealed the Commission's decision to the Chancery Court for Davidson County. As far as we can determine, Mr. Wayman's appeal of the July 2008 decision is still pending.

On February 24, 2009, Mr. Wayman appeared before the Commission on charges that he had violated Commission Rule 24 and M.C.L. 6.80.450(I) when he towed Mr. Wilson's vehicle in April 2008. Rule 24 provides that "there may be no relationship between" the agent of a property owner designated to authorize towing from private property without consent of the vehicle owner and the towing company. The Commission found that Debbie Knight, who Mr. Wayman asserted had authorized the towing of Mr. Wilson's vehicle, was also known as Debbie Flowers, and that she was the daughter of Mr. Wayman's girlfriend. The Commission determined that Debbie Flowers had provided Mr. Wayman's address on an application for an unarmed security guard license, and that her brother was employed by Able Towing. At the February 2009 meeting, the Commission noted that Mr. Wayman was asked whether Debbie Knight was any relation to him when Mr. Wayman introduced the towing slip and letter at the July 2008 meeting, and that Mr. Wayman replied that she was not. The minutes of the February 2009 meeting reflect that Debbie Flowers/Knight stated that she had not lived at Mr. Wayman's address, but that she used it as a mailing address because her mother lived there. Mr. Wayman stated that Debbie Flowers' mother did not live at his address. The Commission voted to revoke Able Towing's license for violating M.C.L. 6.80.580 by failing to comply with Rule 24.

On March 2, 2009, Mr. Wayman filed a petition for writ of certiorari and supersedeas in the Chancery Court for Davidson County. In his petition, Mr. Wayman asserted that the Commission's February decision was arbitrary and capricious where the Commission had previously found Able Towing guilty of improper towing. He asserted that the matter should have been fully and completely decided in July 2008. He also asserted that there was no substantial and material evidence to support a finding of a relationship between himself and

Debbie Flowers/Knight, and that Rule 24 was unconstitutionally vague where "the word 'relationship' is not defined and can be interpreted to mean anything the [Commission] desires[.]" He asserted that the Rule imposed "an arbitrary and capricious standard" on all wrecker companies.

The trial court issued a writ of supersedeas on March 19, 2009, and heard the matter in May 2009. The trial court found that the testimony in the matter "reveal[ed] with reasonable implication that [Debbie Flower's mother] has had an intimate relationship with Mr. Wayman," that they lived together for a period of years, and that Debbie Flowers, also known as Debbie Knight, had lived at the same address. The trial court found that the issue of the relationship between Debbie Knight and Mr. Wayman arose at the July 2008 hearing, when Mr. Wayman introduced the tow slip and signed statement to demonstrate that the tow of Mr. Wilson's car had been authorized. The trial court determined that the signatures on the tow slip and statement "certainly did not match," and that the relationship was investigated after the July 2008 hearing. The trial court found that Debbie Flowers also goes by the name Debbie Knight, and that, on her security guard application, she stated that Mr. Wayman's address had been her address for the years 2004-2006.

The trial court determined that the doctrine of *res judicata* did not apply and that Rule 24 was not void for vagueness as applied to Mr. Wayman. It also found that the Commission's finding of a relationship between Mr. Wayman and Debbie Flowers/Knight was supported by substantial and material evidence. The trial court found that Mr. Wayman understood and was aware of the meaning of the term "relationship" in Rule 24, and that the testimony revealed an understanding that the purpose of the Rule was to avoid the "bias and motivation for kickbacks" revealed in this case. The trial court dismissed Mr. Wayman's petition, vacated the March 19 writ of supersedeas, and affirmed the Commission's decision. Final judgment was entered on June 4, 2009. The trial court denied Mr. Wayman's motion to stay the judgment pending appeal.

Mr. Wayman filed a timely notice of appeal to this Court. He asserts that the trial court erred by determining that the Commission's actions were not barred by the doctrine of *res judicata*. He also submits that the trial court erred by concluding that Rule 24 is not unconstitutionally vague. We review the trial court's findings of fact with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). Accordingly, we will not reverse the trial court's factual findings unless they are contrary to the preponderance of the evidence. We review the trial court's conclusions on matters of law *de novo*, however, with no presumption of correctness. Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000).

We turn first to whether the Commission's action was barred by the doctrine of *res*

*judicata*. *Res judicata* is a claim preclusion doctrine. *Massengill v. Scott*, 738 S.W.2d 629, 631 (Tenn.1987). Under the doctrine, a final judgment on the merits rendered by a court of competent jurisdiction concludes the rights of the parties and their privies. *Richardson v. Tenn. Bd. of Dentistry*, 913 S.W.2d 446, 459 (Tenn.1995). The doctrine bars a subsequent action between the parties that involves the same claim or cause of action. *Id*. It prohibits multiple lawsuits with respect to issues which were or could have been litigated in the prior suit. *Massengill*, 738 S.W.2d at 631. Accordingly, *res judicata* applies not only to issues that were raised and adjudicated in the prior lawsuit, but to "all claims and issues which were relevant and which could reasonably have been litigated in a prior action.*" Am. Nat'l Bank and Trust Co. of Chattanooga v. Clark*, 586 S.W.2d 825, 826 (Tenn.1979). It is a "rule of rest" that promotes finality in litigation. *Moulton v. Ford Motor Co.*, 533 S.W.2d 295, 296 (Tenn. 1976)(quoting 2 Freeman on Judgments, § 626, 1320 (5th ed.1925)). In order for the doctrine of *res judicata* to apply, the prior judgment must have been final and concluded the rights of the parties on the merits. *Richardson*, 913 S.W.2d at 459.

*Res judicata* is a doctrine that is applicable to final orders of a court that "determine with finality the substantive rights of parties." *Mitchell v. Cole*, 966 S.W.2d 411, 413 (Tenn. 1998)(quoting *In re Greater Jacksonville Transp. Co.,* 169 B.R. 221, 224 (Bankr. M.D. Fla. 1994)). The doctrine also is applicable to the determinations of administrative agencies acting in a quasi-judicial capacity when (1) the issues decided in adjudicative proceedings are identical; (2) the prior adjudication resulted in a judgment on the merits; (3) the proceedings involve the same parties; and (4) the parties had a full and fair opportunity to litigate the issue in the prior proceeding. *Mangrum v. Wal-Mart Stores, Inc.*, 950 S.W.2d 33, 36 (Tenn. Ct. App. 1997).

In this case, we agree with the trial court's finding that the Commission's July 2008 hearing dealt with the lack of authorization to tow vehicles without the owner's consent, while the February 2009 hearing pertained solely to whether Mr. Wayman violated Rule 24 by receiving authorization to tow from a person with whom he had some relationship. Rule 24 became an issue in July 2008 when Mr. Wayman introduced a tow slip signed by Debbie Knight. It was only after the introduction of this evidence that the Commission conducted an investigation and heard charges against Mr. Wayman for violations of the Rule.

We next turn to Mr. Wayman's assertion that Rule 24 is void for vagueness. Rule 24 provides that a towing company must have express written permission from a property owner or the owner's agent to tow a vehicle from private property without the vehicle owner's consent. It further provides:

> There shall be some relationship between the private property owner and the
> designated agent, and there may be no relationship between the designated

agent and the towing company. No employee of a wrecker company or designee of a wrecker company may patrol or otherwise participate in the decision making process about which vehicles are to be towed[.]

Mr. Wayman argues that the Rule is unconstitutionally vague because the meaning of "relationship" is not defined. He asserts that the term could mean a familial relationship, a legal relationship, a social relationship, or apply to a mere acquaintance or fellow church member. He states in his brief the he "clearly had some relationship with Ms. Knight because she was the sister of one of his wrecker drivers and the daughter of his former girlfriend – but did he know that he was doing something illegal by towing a vehicle after being called by Ms. Knight."

The Commission argues that the clear purpose of Rule 24 is to avoid any relationship between a property owner and a towing company in order to prevent "improper pay schemes, kickbacks, etc." It further asserts that the purpose is clear from the language of the Rule itself and from the generally accepted definition of "relationship." The Commission further asserts that the Rule clearly is not vague as applied to this case.

The "void for vagueness" doctrine is based on fairness; it is intended "only to give 'fair warning' of prohibited conduct." *Phillips v. State Bd. of Regents of State Univ. and Cmty.*, 863 S.W.2d 45, 48-49 (Tenn. 1993). It arose in the context of criminal law and was extended into the civil arena in the 1970's. *Id.* As our supreme court has noted, however, "[i]t is not designed to convert into a constitutional dilemma the practical difficulties inherent in drafting statutes." *Id.* at 49 (citing *Colten v. Kentucky*, 407 U.S. 104, 110, 92 S.Ct. 1953, 1957, 32 L.Ed.2d 584 (1972)). In light of the limitations of language, some degree of common sense is necessary, and a non-criminal statute is not unconstitutionally vague if it is written "in terms such that an ordinary person exercising ordinary common sense can sufficiently understand and comply." *Id.* (citing *Arnett v. Kennedy*, 416 U.S. 134, 159, 94 S.Ct. 1633, 1647, 40 L.Ed.2d 15 (1974)). Additionally, "it is also necessary to examine the statute or standard to see whether it is vague as applied to the affected party." *Id.*

In this case, we agree with the trial court that Rule 24 is not unconstitutionally vague, particularly as applied to Mr. Wayman. Ms. Flowers/Knight is the sister of Mr. Wayman's employee; she is the daughter of a girlfriend with whom he resided; she apparently resided at the same home as Mr. Wayman, or at least used his mailing address. We agree with the trial court that a person exercising ordinary common sense would understand that Ms. Flowers/Knight is a person with whom Mr. Wayman had some relationship.

In light of the foregoing, we affirm the judgment of the trial court. Costs of this appeal are taxed to the Appellant, Mark Wayman d/b/a Able Towing, and to his surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE